```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 8/2/12
```

LAW OFFICES OF

# GOLDBERG & DOHAN, L.L.P.

GEORGE Z. GOLDBERG ◊+
RUSSELL A. DOHAN +

FROM THE OFFICE OF:
PENN U. DODSON *◊

* MEMBER OF THE NY BAR
◊ MEMBER OF THE GA BAR
+ MEMBER OF THE FL BAR

ADDITIONAL OFFICES IN
GEORGIA, FLORIDA, TENNESSEE, COLORADO,
NORTH CAROLINA, ALABAMA, MICHIGAN & SOUTH CAROLINA

Reply to: NEW YORK

WEB ADDRESS: WWW.GOLDBERGDOHAN.COM
MAIN TELEPHONE (800) 719-1617
FACSIMILE (888) 272-8822

NEW YORK / NEW JERSEY OFFICE:

275 MADISON AVENUE
SUITE 705
NEW YORK, NEW YORK 10016

DIRECT (646) 502-7751

HOME OFFICE:

1776 NORTH PINE ISLAND ROAD
SUITE 224
PLANTATION, FLORIDA 33322

DIRECT (954) 318-2888

June 13, 2012

Hon. Jesse M. Furman
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

*[Handwritten: The Court finds that the redactions herein are reasonable and narrowly tailored to the interest in preserving confidentiality of settlement discussions. The parties' unredacted letter shall be filed under seal. SO ORDERED. [signature] August 2, 2012]*

RE:   *Perez et al v. Jupada et al*, Case No. 1:10-cv- 03118-JMF
      ~~Confidential~~

Your Honor:

Pursuant to your Order dated May 18, 2012, the parties have conferred and provide the following joint statement regarding the issues raised by the Court. This letter was drafted by counsel for plaintiffs, but counsel for defendants has submitted his comments regarding (1) the justifiability of the portion of the settlement designated as attorneys' fees; and (2) the fairness of the proposed separate settlement of the named plaintiffs' retaliation claims. These are addressed below in inverse order.

~~~ CONFIDENTIAL ~~~

The information contained herein is intended to be confidential, as it pertains to confidential settlement negotiations and matters outside that which should be made public in the context of an FLSA settlement. Also, there is an express confidentiality provision contained in the separate agreement pertaining to the retaliation claims. The parties are submitting this letter in full candor and disclosure to your Honor to give you an opportunity to assess the fairness of the settlement. However, should Your Honor wish for the parties to submit any documentation for the record we request the opportunity to provide documents giving less detail.

By way of brief overview, the parties appeared in person and participated with Magistrate Judge Freeman in a Settlement Conference on June 17, 2011. In that session, the parties agreed on a resolution that involves the following total consideration:

| | |
|---|---|
| ██████ | Retaliation/named plaintiff general release agreement |
| $106,500 | Class/collective wage claims |
| ██████ | Total |

*(1) Retaliation claims.*

   *a. Plaintiffs' Perspective*

The named plaintiffs had legally interesting and factually disputed retaliation claims. The crux of the allegations was that one of the young McDonald's cashier plaintiffs, knowing that he was not being paid time and a half and was being paid in separate checks at a straight time rate for hours over 40, refused to sign off on a form about overtime payments and was fired the next day. His brother was also fired at the same time. Defendants offered factual counter-arguments as to why they were terminated.

At the time the lawsuit was filed, in the Second Circuit oral complaints were on tenuous legal grounds under the FLSA until the Supreme Court *Kasten* decision came down. Also legally interesting was the question as to whether "associational" retaliation claims (i.e. a plaintiff being fired for his brother's, not his own, protected activity) were cognizable under the FLSA (and/or NYLL). These legal questions were on a trajectory toward extensive briefing and legal argument; in fact, a significant amount of time and research effort was already invested in the case. Thus, on both legal and factual grounds, continued intensive litigation lay ahead.

As McDonald's cashiers, the named Plaintiffs' back wages damages were anticipated to be relatively low.

For all these reasons, settlement of the retaliation claims was manifestly warranted.

There was insurance coverage for the [individual] retaliation claims, but not for the [class] wage claims. The fact that there were different payors for those claims was a (if not the) primary reason for having separate settlement agreements.

The named plaintiffs agreed to general releases, whereas the class members are only releasing certain wage claims.

For this separate agreement – retaliation claims, general release of all claims, and separate consideration - the total recovery was ▓▓▓. One plaintiff received ▓▓▓; the other (the

~~ CONFIDENTIAL ~~

brother), ███. The plaintiffs agreed to these figures during the settlement conference we held with Magistrate Judge Debra Freeman. The parties agreed at that conference on the amount of ███ for attorneys' fees and costs related to the retaliation claims. In their retainer agreements, the plaintiffs had agreed that attorney fees would be contingent and would amount to the greater of 45% of the total recovery or the amount of time expended at $325 per hour (and would be responsible for out of pocket costs as well). 45% of ███ is ███, and costs far exceeded ███.

### b. *Defendants' Perspective*

As plaintiffs have noted, there indeed were legal issues surrounding the retaliation claims, which defendants intended to raise by way of motion practice. Defendants believed that these issues had a substantial chance of success. Even more significant to defendants, however, were facts which defendants believed plaintiffs were really not in a position to controvert, and which would have been presented in support of a summary judgment motion or at trial.

Although the Complaint alleges that one of the brother-plaintiffs refused to sign a form on which he was asked to waive his right to overtime, ███████████████████████

Case 1:10-cv-03118-JMF   Document 42   Filed 08/02/12   Page 5 of 9



Of even greater significance would have been defendants' evidence of legitimate non-retaliatory reasons why the plaintiffs were fired. They had  Defendants' belief that ▇▇▇ and not any protest by one or another of the plaintiffs over overtime pay, was what led to the brothers' firings. Defendants believed at the time of the Settlement Conference that these facts would have provided strong support for a summary judgment motion on the retaliation claim, because Jupada's management had an honest belief, based on the reports of co-employees and the one brother's incriminating actions, that the plaintiffs ▇▇▇ deserved to be discharged.

~~ CONFIDENTIAL ~~

Defendants recognized, of course, that proceeding into depositions and preparing a summary judgment motion would have involved substantial effort and fees, and would be hotly contested.

As plaintiffs' counsel noted, these plaintiffs had relatively low potential economic damages, since they were part-time cashiers paid just above minimum wage. Ultimately, defendants considered that the amount for which it appeared the retaliation claims could be settled at the settlement conference was sufficiently close to the likely litigation costs associated with conducting/defending depositions and preparing summary judgment motion papers, that it made good business sense to agree to resolve them for the amount described above. Defendants considered the amounts each plaintiff would receive – ███████████████████████ ███████████ – to be reasonable in light of the relative strengths of the parties' positions and the anticipated cost of pursuing the litigation.

Defendants take no position on the amount of the attorneys' fees plaintiffs may have incurred in connection with the retaliation claims, but do respectfully submit to the Court that the settlement of the retaliation claims is fair and reasonable and should be approved.

*(2) Attorney fees.*

   *a. Plaintiff's Perspective*

In this case, counsel for the named plaintiffs and the putative class request 33%[1] of the class claims gross settlement fund of $106,500 as attorney fees, which amounts to $42,600.

---

[1] Even though the Plaintiffs themselves authorized a 45% attorney fee recovery in their retainer agreements Plaintiffs' counsel are not requesting that amount for the class work.

"Private attorneys prosecuting wage and hour claims must be adequately compensated for their time and labor." *Sewell v. Bovis Lend Lease*, 2012 U.S. Dist. LEXIS 53556 (S.D.N.Y. Apr. 16, 2012). "If not, wage and hour abuses would go without remedy because attorneys would be unwilling to take on the risk." *Id*. citing *Prasker v. Asia Five Eight LLC*, 2010 WL 476009, at *6 (S.D.N.Y. 2010). "Attorneys who protect labor rights must be adequately compensated and such compensation furthers the remedial purposes of the FLSA and the NYLL.'" *Id*.

"[C]ourts have routinely awarded a 33% fee in wage and hour cases brought under the FLSA and related statutes." *Stewart v. Prince Telecom, Inc.*, 2011 U.S. Dist. LEXIS 130364 (S.D.N.Y. 2011).[2] Courts commonly award lodestar multipliers between two and six. *Sewell*, 2012 U.S. Dist. LEXIS 53556, citing *Johnson*. "Additionally, where class counsel will be required to spend significant additional time on this litigation in connection with implementing and monitoring the settlement, the multiplier will actually be significantly lower because the award includes not only time spent prior to the award, but after in enforcing the settlement" (or judgment). *Sewell*, citing *Bellifemine v. Sanofi*, 2010 WL 3119374, at *6 (S.D.N.Y. 2010).

Following is a summary of time expended in the case.[3] Plaintiffs' counsel expended many hours in this case collecting information, researching the law, analyzing the data, preparing pleadings,

---

[2] citing *Diaz v. E. Locating Serv., Inc.*, 2010 U.S. Dist. LEXIS 139136, 2010 WL 5507912, at *7 (S.D.N.Y. 2010); *deMunecas*, 2010 U.S. Dist. LEXIS 87644, 2010 WL 3322580, at *8; *Clark v. Ecolab, Inc.*, 2010 U.S. Dist. LEXIS 47036, 2010 WL 1948198, at *8-9 (S.D.N.Y. 2010); *Duchene v. Michael Cetta, Inc.*, 2009 U.S. Dist. LEXIS 85955, 2009 WL 5841175, at *3 (S.D.N.Y. 2009) (32.2%); *Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*, 2009 U.S. Dist. LEXIS 27899, 2009 WL 5851465, at *5 (S.D.N.Y. Mar. 31, 2009); *Stefaniak v. HSBC Bank USA, N.A.*, 2008 U.S. Dist. LEXIS 53872, 2008 WL 7630102, at *3 (W.D.N.Y. 2008); *Gilliam v. Addicts Rehab. Ctr. Fund*, 2008 U.S. Dist. LEXIS 23016, 2008 WL 782596, at *5 (S.D.N.Y. Mar. 24, 2008).

[3] In lieu of contemporaneous time records, a fee applicant may submit "summaries ... accompanied by affidavits stating that the summaries are accurate and based on contemporaneous records." *Pressman v. Estate of Steinvorth*, 886 F. Supp. 365, 367 (S.D.N.Y. 1995), citing *Cruz v. Local Union No. 3 of Int'l Bhd. of Elec. Workers*, 34 F.3d 1148, 1160 (2d Cir. 1994)). Because time records implicitly contain strategy, methodology, and patterns of

participating in a formal settlement conference, informally negotiating both dollar amounts and other terms, etc. Ms. Dodson's hourly rate has been authorized by other district judges at a rate of $325 for 2010 and $375 for 2011. She expended 76.7 hours on this case in 2010 and 65.0 in 2011. This would total $49,302.50. She directed the work of support staff in this case; billing $95/hr for paralegal/law clerk work, their 18.6 hours of work would total $1,767. In addition, the managing partner of Ms. Dodson's firm, George Goldberg, expended 12.9 hours in this case; at $450 per hour his contribution would total $5,805. In all, this would amount to $56,874.50. (By point of reference, if awarded as requested, between the retaliation claims and the class claims attorney fees recovered would total ███████).

Although the settlement agreement allows Plaintiffs' counsel to request up to $13,000 in costs, we do not anticipate requesting more than approximately $3,000-$4,000. We had hired an expert to assist with the data analysis, but ultimately found his work unusable and unacceptable in quality; there was a dispute as to his fee as well. Although this would have been a "cost" of the case and would not have come out of the firm's pocket, we took this position challenging what we believed to be excessive billing in protection of the class's resources. We will therefore only be requesting reimbursement for the deposit we gave him and not the $11,000+ bill we received from him but disputed.

---

thinking, I prefer not to disclose the records themselves as doing so has the potential to prejudice my potential future clients. If requested by this Court I am happy to do so but request that they be reviewed in camera.

~~~ CONFIDENTIAL ~~~

### b. Defendants' Perspective

Defendants take no position on the issue of attorneys' fees related to the wage claims, as they are matters that solely affect the amount that putative members of the class of employees and ex-employees will ultimately receive in the settlement.

Thank you for your consideration of these matters. We look forward to meeting with you on June 25.

Sincerely,

Penn Dodson
Goldberg & Dohan, L.L.P.
Counsel for Plaintiffs

Christopher H. Mills,
Fisher & Phillips, LLP
Counsel for Defendants